## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| WB MURPHY ROAD | § | CASE NO. 15-31307-H5-7 |
| DEVELOPMENT, LLC | § | |
| DEBTOR | § | CHAPTER 7 |

### TRUSTEE'S AMENDED OBJECTION TO UNSECURED CLAIM OF
### DOUG & KAY SHAFFER (CLAIM 12)

---

**NOTICE PURSUANT TO LOCAL RULE 3007**

THIS IS AN OBJECTION TO YOUR CLAIM. THE OBJECTING PARTY IS ASKING THE COURT TO DISALLOW THE CLAIM THAT YOU FILED IN THIS BANKRUPTCY CASE. YOU SHOULD IMMEDIATELY CONTACT THE OBJECTING PARTY TO RESOLVE THE DISPUTE. IF YOU DO NOT REACH AN AGREEMENT, YOU MUST FILE A RESPONSE TO THIS OBJECTION AND SEND A COPY OF YOUR RESPONSE TO THE OBJECTING PARTY WITHIN 30 DAYS AFTER THE OBJECTION WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE OBJECTION IS NOT VALID. IF YOU DO NOT FILE A RESPONSE WITHIN 30 DAYS AFTER THE OBJECTION WAS SERVED ON YOU, YOUR CLAIM MAY BE DISALLOWED WITHOUT A HEARING.

A HEARING HAS BEEN SET ON THIS MATTER ON DECEMBER 21, 2017 AT 2:00 P.M. IN COURTROOM 403, UNITED STATES COURTHOUSE, 515 RUSK AVENUE, HOUSTON, TEXAS 77002.

---

TO THE HONORABLE KAREN BROWN, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Lowell Cage, Trustee ("Trustee") of the estate of WB Murphy Road Development LLC (the "Debtor")[1], and files this Amended Objection to the Unsecured Claim of Doug & Kay Shaffer (Claim 12)[2], and in support thereof respectfully represents as follows:

---

[1] Trustee is also the duly appointed and acting Trustee for the chapter 7 estates of Porter Development Partners LLC ("Porter"), Creekmont Plaza Partners GP LLC ("Creekmont GP"), Creekmont Plaza Partners LP ("Creekmont LP"), Lakecrest Village Investment LLC ("Lakecrest"), Riata West Investment, LLC ("Riata"); Replacement Sanctuary GP LLC ("Replacement"), WB Sanctuary GP LLC ("Sanctuary GP"), WB Chancel GP LLC ("Chancel GP"), WB 2610 LLC ("WB 2610"), WB Real Estate Holdings LLC ("Holdings"), Meadow Crest Developers GP LLC ("Meadow Crest GP"), Meadow Crest Developers 226 LP ("Meadow Crest LP"), Morton & Porter GP LLC ("Morton GP"), Morton & Porter LP ("Morton LP"), WB Substitute GP LLC ("Substitute GP"), West Houston WB Realty Fund LP ("Fund I"), PPP Management, LLC ("PPP Management"), WBIF II GP LLC ("WBIF"), Wallace Bajjali Investment Fund II LP ("Fund II"), and US Public – Private Real Estate Fund I, LP ("US Public") (collectively, the "Wallace Bajjali Debtors")

[2] On October 9, 2017, Trustee filed his Objection to the Unsecured Claim of Doug & Kay Shaffer (Claim 12) (Doc. No. 72), which is referred to and incorporated herein by reference for all purposes.

## FACTUAL BACKGROUND

1.       Prior to commencement of Debtors' bankruptcy proceedings, Costa Bajjali ("Bajjali") and David Wallace ("Wallace"), former principals of the Wallace Bajjali Debtors, formed three affiliated investment funds including Fund I, Fund II, and LFW Economic Opportunity Fund LP (the "LFW Fund") (collectively the "Affiliated Funds") and allowed individual investors to invest and hold pro rata interests in the Affiliated Funds.  The Affiliated Funds made investments in limited partnerships or limited liability corporations that were formed by Bajjali and Wallace to acquire and develop or resell commercial real property projects.

2.       Due to the economic downturn in 2008-2009, the General Partners of the Affiliated Funds proposed to consolidate the Affiliated Funds and their respective real estate assets into one consolidated holding company in an effort to sustain business operations and successfully complete development of ongoing real estate projects.  Individual investors were notified of the proposed consolidation of the Affiliated Funds in which they had invested.

3.       In May 2009, Fund I, Fund II, the LFW Fund and WB Holdings entered into that certain Contribution Agreement (the "Contribution Agreement"). Pursuant to the terms of the Contribution Agreement, Fund II contributed its percentage ownership interests in certain limited partnerships, limited liability corporations, and joint ventures as identified therein (the "Fund II Contributed Interests") to WB Holdings.  The equity interests of the Affiliated Funds in BusinessRadio Networks LP d/b/a BizRadio were not contributed to WB Holdings in the parties' Contribution Agreement.  Consequently, the consolidation transaction did not affect Fund II's equity ownership in BusinessRadio Networks LP d/b/a BizRadio.

4.       Upon consummation of the Contribution Agreement, individual investors in Fund I, Fund II, and the LFW Fund held the same *pro rata* interest, which were held by them prior to the consolidation, in the respective Funds' *pro rata* interest in WB Holdings.

**A.  Commencement of SEC's Enforcement Action Relating to BizRadio Investments**

5.      In November 2009, the Securities and Exchange Commission (the "SEC") commenced Civil Action No. 4:09-3674 in the United States District Court for the Southern District of Texas (the "SEC Enforcement Action") against Albert Kaleta and Kaleta Capital Management Inc.  ("KCM") (collectively the "Kaleta Defendants") for their fraudulent offering of promissory-note securities to approximately 50 investors.  In the SEC Enforcement Action, the SEC alleged that Kaleta directed KCM to loan approximately $6.7 million of the offering proceeds to BusinessRadio Network LP d/b/a BizRadio ("BizRadio") and Daniel Frishberg Financial Inc. d/b/a DFFS Capital Management Inc. (collectively the "Relief Defendants") two financially precarious KCM affiliates who had no reasonable prospect of repaying the loans. The SEC also alleged that Kaleta took about $1.5 million of the offering proceeds to pay his personal expenses and that Kaleta directed KCM to use offering proceeds to make interest payments to some promissory-note investors.   By reason of their actions, the SEC alleged that Kaleta and KCM violated various sections of the Securities Acts of 1933 and 1934, the Exchange Act, and the Investment Advisers Act of 1940.  The SEC sought judgment against Kaleta and KCM as follows: injunctive relief, disgorgement of illicit profits, payment of civil money penalties, and the appointment of a receiver for KCM's assets.  The SEC also initially sought disgorgement from the Relief Defendants solely for the purposes of equitable relief.

6.      In December 2009, the District Court approved the Agreed Order of the SEC and Kaleta and KCM ordering the appointment of a receiver (the "Receivership Order").  The SEC, Kaleta, and KCM simultaneously entered into their Agreed Judgment in which Kaleta and KCM agreed to injunctive relief and disgorgement of ill-gotten gains and payment of civil penalties for later determination by the District Court upon request of the SEC.

7.      As part of the Receivership Order, the District Court ordered as follows:

- appointed Thomas L. Taylor to be the receiver (the "Receiver) for KCM assets

- commanded the Receiver to perform all acts necessary to conserve, hold, manage, and preserve the value of the receivership estate

- restrained "creditors and all persons" from the commencement or continuation of any judicial, administrative, or other proceeding against the Receiver, the Defendants, and the receivership interest

- restrained creditors and all persons without prior approval of the court from any act to obtain possession of the receivership estate assets

8.      In May 2010, the Receiver filed his Motion to Modify the Receivership Order requesting an expansion of the receivership estate based on the alleged intertwined assets of the Relief Defendants and the Kaleta Defendants. Subsequently, pursuant to a stipulation to modify the Receivership Order, the District Court entered an Order Modifying the Receivership Order and expressly expanded the scope of the receivership assets to include assets of the Relief Defendants.

**B.  Receiver's Sale of BizRadio Assets**

9.      After entry of the Order Modifying the Receivership Order, the Receiver requested authority from the District Court in May 2011 to sell the radio station assets in Alvin, Texas, of BizRadio, one of the Relief Defendants, for the sum of $1.0 million, the assumption of certain expenses, and other non-cash consideration to South Texas Broadcasting Inc. ("STB") Various noteholders and/or investors of BizRadio (the "BizRadio Noteholders"), represented by Charles Thomas Schmidt and the Schmidt Law Firm (collectively "Schmidt") as their counsel, objected to the Receiver's proposed sale to STB. After an initial hearing before the District Court

in late June 2011, the BizRadio Noteholders withdrew their objection to the Receiver's sale to STB but continued to assert their claim to the BizRadio assets and, therefore, the sale proceeds as secured creditors and, alternatively, their claim for equitable subrogation since their funds were allegedly used to pay off the original lender of BizRadio. In late October 2011, the District Court approved the Receiver's sale of the BizRadio assets; and on December 2, 2011, the District Court entered its Memorandum and Order approving the proposed sale and its rejection of the BizRadio Noteholders' claims and finding that the BizRadio Noteholders did not establish that their funds paid the debts of BizRadio and that they did not hold enforceable security interests in the BizRadio assets.

### C. Commencement of SEC's Action against Principals of Wallace Bajjali Debtors

10.     In May 2011, the SEC also filed additional enforcement actions related to the receivership proceeding including *SEC v. David Gordon Wallace Jr. and Costa Bajjali* in Civil Action No. 4:11-cv-1932  (the "WB Enforcement Action") alleging violations of the Securities Act of 1933.  This action arose because the Wallace and Bajjali controlled Fund II and the LFW Fund took debt and equity position in BizRadio which allegedly exceeded the maximum positions Wallace and Bajjali represented to investors that those investment funds would take in any single business or project.  An Agreed Final Judgment was entered in the WB Enforcement Action against Wallace and Bajjali permanently enjoining each of them from future violations of the Securities Act and imposing civil penalties on each of them in the amount of $60,000.00.

### D. Receiver's Settlement with Wallace Bajjali Parties

11.     After completing his analysis and evaluation of the potential claims in the SEC Enforcement Action, the Receiver reached an agreement to settle the receivership estate claims. In September 2011, the Receiver filed his Motion for Order Approving Proposed Settlement and

for Ancillary Orders (the "Settlement Motion") in the SEC Enforcement Action.  In the Settlement Motion, the Receiver requested authority to settle all claims of the receivership estate against Wallace, Bajjali, Fund I, Fund II, and the LFW Fund, Spring Cypress Investments LP ("Spring Cypress Investments"), and Wallace Bajjali Development Partners LP ("WB Development Partners") (collectively the "Wallace Bajjali Parties"). In connection with the settlement, the Receiver also sought entry of an order barring for all time claims of the BizRadio Noteholders against the Wallace Bajjali Parties (the "Bar Order") in connection with or related to loans or promissory notes obtained through any Wallace Bajjali Party as agent and issued by any BizRadio entity. However, the BizRadio Noteholders would be able to assert their radio station loan-related claims through the claims process in the Receiver's ultimate plan of distribution of receivership assets.  The BizRadio Noteholders opposed the Receiver's proposed settlement; and on October 2, 2011, filed their formal objection with the District Court.   In their objection, the BizRadio Noteholders asserted various grounds for opposing the settlement including, but not limited to, inadequate consideration for the settlement and foreclosure of their personal claims against non-parties.

12.    Upon hearing the Settlement Motion, the District Court ordered the Receiver to submit financial documents of the Wallace Bajjali Parties *in camera*.  After reviewing the financial documents of the Wallace Bajjali Parties and considering the Receiver's assessment of the cost of litigation and difficulty of collecting any judgment and merits of the proposed settlement, the District Court approved the settlement and issued its Memorandum and Order finding that the Bar Order advances the Receiver's goal "of limiting litigation involving the BizRadio entities in regard to radio station liabilities and assets . . . to enable the Receiver to collect as many assets as possible for distribution among all defrauded investors." (Memorandum

at page 23). Subsequently, on August 1, 2012, the District Court entered its Final Bar Order and Injunction which specifically ordered that "any and all of the BusinessRadio Note Holders are hereby permanently barred, restrained, and enjoined, . . . from commencing or continuing any judicial . . or other proceeding and/or asserting or prosecuting any claims and/or causes of action against any of the Wallace Bajjali Parties arising out of, in connection with, or relating in any way to the BusinessRadio Note Plan, the loans made to BusinessRadio or its related entities by the BusinessRadio Note Holders, and/or the notes issued by BusinessRadio or its related entities to the BusinessRadio Note Holders."

13.     On appeal of the District Court's Order, the Fifth Circuit affirmed the District Court's approval of the Receiver's settlement agreement with the Wallace Bajjali Parties and the Bar Order. *SEC V. KALETA*, 530 f. App'x 360 (5th Cir. 2013).

14.     In August 2015, the BizRadio Noteholders requested the District Court to Modify the Bar Order on the grounds that the Wallace Bajjali Parties defaulted on the terms of their settlement with the Receiver in December 2014.  In September 2015, the District Court held a hearing on the BizRadio Noteholders' request for modification of the Bar Order and soon thereafter entered its Memorandum and Order on September 29, 2015, and found that the BizRadio Noteholders had not satisfied the requirements of Fed. R. Civ. Proc. 60 to lift the Bar Order.

**E.   District Court's Approval of Receiver's Final Distribution**

15.     By mid-2016, the Receiver had substantially completed his work in liquidating and recovering assets for distribution to investors and creditors as required by the District Court's appointment orders for the receivership estate.  On June 24, 2016, the Receiver filed his Motion to Approve Final Plan of Distribution of Receivership Assets (the "Motion to Approve

Distribution Plan") in which the Receiver proposed a final distribution on a *pro rata* basis to the claimants of the receivership estate. The Receiver proposed to treat all claimants as similarly situated – regardless of the receivership entity (or entities) into which they invested – for purposes of determining the *pro rata* distribution to each.

16.     On January 5, 2017, the District Court approved the Motion to Approve Distribution Plan. Thereafter, the Receiver filed his Notice of Final Distribution to Final Claimants (the "Notice of Final Distribution"). Pursuant to the Notice of Final Distribution, the Receiver proposed to distribute the sum of $124,716.46 to Fund II as the holder of Claim 90 for equity investments in BizRadio totaling in excess of $6.388 million between 2006 and 2008.

17.     In February 2017, the Receiver remitted the sum of $124,716.46 to the Trustee as trustee for the bankruptcy estate of Fund II. After completing his claims review process and resolving and/or litigating disputed claims for the bankruptcy estate of Fund II, the Trustee will distribute these monies, after payment of administrative claims, on a *pro rata* basis to the holders of allowed claims for the bankruptcy estate of Fund II.

**F.   BizRadio Noteholders' Initiation of Harris County District Court Litigation**

18.     On June 25, 2014, Doug & Kay Shaffer ("Shaffer"), along with 37 of the other BizRadio Noteholders, initiated Cause No. 2014-36580 styled *Ronald & Lavonne Ellisor et al. v. Daniel Frishberg et al* in the 61st Judicial District Court of Harris County, Texas (the "District Court Lawsuit") against 18 defendants including, but not limited to, Daniel Frishberg, several Wallace-Bajjali related entities and their principals, Costa Bajjali and David Wallace, and several of the Wallace-Bajjali Debtors (collectively the "Frishberg Defendants"). The Debtor (Murphy Road) was not sued as a party in the District Court Lawsuit. Shaffer and the other BizRadio Noteholders alleged various claims against the Frishberg Defendants including, but not limited

to, negligent misrepresentation, breach of fiduciary duty, and common law fraud in the District Court Lawsuit.  A copy of the Original Petition filed in the District Court Lawsuit is attached hereto as **Exhibit "A"**.  The genesis of the BizRadio Noteholders' claims asserted in the District Court Lawsuit arises from their investments in the defunct BizRadio.  The BizRadio Noteholders allege that the Frishberg Defendants used BizRadio as a platform to illegally market their investment businesses in violation of state securities laws.

19.     In early March 2015, the BizRadio Noteholders also sought imposition of a constructive trust over the assets of the Wallace-Bajjali related entities, the appointment of a receiver, and issuance of an order finding the Frishberg Defendants indebted to them in the aggregate amount of $11.465+ million.   A copy of the Application for Writ of Attachment filed in the District Court Lawsuit is attached hereto as **Exhibit "B".**   On March 24, 2015, David Wallace filed his voluntary chapter 7 bankruptcy proceeding in Cause No. 15-31594 in the United States Bankruptcy Court in the Southern District of Texas and simultaneously filed his Notice of Initiation of Bankruptcy in the District Court Lawsuit.

20.     On March 30, 2017, the Trustee filed the Suggestion of Bankruptcy for the estates of the Wallace-Bajjali Debtors which have been included as parties in the District Court Lawsuit.

21.     The Wallace-Bajjali Debtors have not been severed as parties and the automatic stay has not been lifted in their bankruptcy proceedings.  Nevertheless, the BizRadio Noteholders have continued prosecution of their claims and have recently filed their Eighth Amended Petition in the District Court Lawsuit against the Frishberg Defendants.  By footnote reference, the BizRadio Noteholders mention the bankruptcy proceedings of the related Wallace-Bajjali Debtors and imposition of the automatic stay in the District Court Lawsuit.

## COMMENCEMENT OF DEBTOR'S
## BANKRUPTCY PROCEEDING

22.     On March 3, 2015 (the "Petition Date") the Debtor (Murphy Road) filed its voluntary chapter 7 petition for relief in the United States Bankruptcy Court for Southern District of Texas.[3]

23.     On April 9, 2015, Lowell T. Cage was appointed as successor trustee for the Debtors' estates.

24.     On May 5, 2015, Trustee moved for the joint administration of the Debtor's cases before this Court.   On May 22, 2015, this Court ordered joint administration of Debtor's case and all other related cases of Wallace-Bajjali debtors in Porter Development's Case No. 15-31305. (Doc. No. 19)

## PROOF OF CLAIM

25.     On or about May 9, 2016, Doug & Kay Shaffer ("Claimant") filed Claim 12 in this case in the amount of $2,475,000.00 ("Claim 12").[4]  A true and correct copy of Claim 12 is attached hereto as **Exhibit C**.  No documents are attached to Claim 12.  However, since Claimant is one of the parties who initiated the District Court Lawsuit against the Frishberg Defendants Trustee believes that Claimant is either a noteholder or investor in BizRadio and that Claim 12 of the Claimant arises from and relates to the claims asserted in the SEC Action and the District Court Lawsuit.

---

[3] On the same day, Porter filed its voluntary bankruptcy petition. The next day, on March 4, 2015, Creekmont GP and Creekmont LP filed voluntary bankruptcy petitions. On April 2, 2015, Lakecrest, Riata, Replacement, Sanctuary GP, Chancel GP, WB 2610, Meadow Crest GP, Meadow Crest LP, Morton GP, Morton LP, Substitute GP, Fund I, PPP Management, WBIF, Fund II, and US Public filed their voluntary bankruptcy petitions.

[4] Schmidt is counsel for the Claimant.  In addition to filing Claim 12 on behalf of the Claimant, Schmidt has filed 40+ similar claims on behalf of other BizRadio Noteholders in multiple Wallace-Bajjali Debtors' cases.

## **GROUNDS FOR OBJECTION**

26.     Trustee objects to Claim 12 of the Claimant on various grounds as follows:

(a)     The claim is unliquidated.  A claim is liquidated where it can be ascertained by a simple calculation. *In re Home*, 277 B.R. 712, 717 (Bankr. E.D. Tex. 2002), *citing First Nat'l Bank v. Insurance Co*., 606 F.2d 760, 769-70 (7th Cir. 1979).  However, when "judgment, discretion, or opinion . . . is required to determine the amount of the claim, it is unliquidated." *Id.*  Since the Debtor (Murphy Road) was not named as a party in the District Court Lawsuit the Claimant did not seek to liquidate his claim against the Debtor.

(b)     The claim is barred by limitations. Moreover, Claimant is barred by limitations from liquidating his claim against the estate. The statutes of limitations on tort and fraud causes of action are two years.  Tex. Civ. Prac. & Rem. Code § 16.003(a).  Because Claim 12 is unenforceable against the Debtor (Murphy Road) it should be disallowed in full. *See* 11 U.S.C. § 502(b)(1) (2012).

(c)     The claim is based on BizRadio investments and not loans to the Debtor.  As already determined by the District Court, the BizRadio Noteholders made loans to BizRadio through the Wallace Bajjali Parties.  As such, the Claimant (as one of the BizRadio Noteholders) holds a claim not against the Debtor's estate but against the BizRadio receivership estate.  In fact, pursuant to the Bar Order, which restrains the BizRadio Noteholders from prosecuting claims against the Wallace Bajjali Parties related to their loans, the BizRadio Noteholders were allowed to participate in the claims process from the Receiver's ultimate distribution of the receivership estate assets.

(d)     The claim is subject to offsets and credits for monies paid to Claimant on his investments. To the extent the Claimant has received pre-petition payments from BizRadio or post-petition payments from the Receiver for the receivership estate or seeks and obtains

payment from any other Wallace Bajjali Debtors, credits for such pre- and/or post-petition payments must be applied to the alleged balance of Claim 12.

(e) <u>The claim is subject to subordination</u>.  Alternatively, because the Claim arises from the purchase of investments in the Debtor or entities related to the Debtor, it is subject to mandatory or equitable subordination. 11 U.S.C. § 510(b), (c) (2017). Accordingly, the Claim should be reclassified as an equity claim to be paid after all valid claims of creditors of the Debtor.

27.     For the foregoing reasons, Trustee requests that Claim 12 be disallowed.

WHEREFORE, Trustee requests that the Claim 12 filed by Doug & Kay Shaffer be disallowed, and that he has such other and further relief to which he may justly be entitled.

Respectfully submitted,

*/s/ Theresa Mobley*
Theresa Mobley
State Bar No. 14238600
Vianey Garza
State Bar No. 24083057

OF COUNSEL:
CAGE, HILL & NIEHAUS, L.L.P.
5851 San Felipe, Suite 950
Houston, Texas 77057
Telephone: (713) 789-0500
Telecopier: (713) 974-0344
ATTORNEYS FOR
LOWELL CAGE, TRUSTEE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on or before November 22, 2017, a true and correct copy of the *Amended Objection to the Unsecured Claim of Doug & Kay Shaffer* was served to the following parties by the following means:

**Claimant**
Doug & Kay Shaffer
c/o Charles Thomas Schmidt
Schmidt Law Firm
3701 Kirby Dr., Suite 845
Houston, Texas  77098
*Via BK/ECF and electronic mail*

**Debtor**
WB Murphy Road Development, LLC
c/o Johnie J. Patterson
Walker & Patterson, P.C.
PO Box 61301
Houston, TX  77208-1301
*Via BK/ECF*

**Claimant's Counsel**
Charles Thomas Schmidt
Schmidt Law Firm
3701 Kirby Dr., Suite 845
Houston, Texas  77098
*Via BK/ECF and electronic mail*

**Debtor's Attorney**
WB Murphy Road Development, LLC
c/o Johnie J. Patterson
Walker & Patterson, P.C.
PO Box 61301
Houston, TX  77208-1301
*Via BK/ECF*

**U.S. Trustee**
Office of the U.S. Trustee
515 Rusk Ave., Ste. 3516
Houston, Texas 77002
*via BK/ECF*

*s/ Vianey Garza*
Vianey Garza